IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO: 6:22-cr-1012-DCC |
| v. | |
| LAWRENCE JOSEPH FLORENTINE | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT 4 OF THE INDICTMENT**

Defendant Lawrence Joseph Florentine moves to dismiss Count 4, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, for failure to state an offense under Title 18 U.S.C. § 844(h)(1) as a matter of law. ECF No. 91. For the reasons herein, the Court should deny the motion.

**Procedural History**

On December 13, 2022, a grand jury returned a four-count indictment charging the Defendant with interstate domestic violence resulting in death, in violation of 18 U.S.C. § 2261(a)(2) (Count 1); use of a firearm in the furtherance of a crime of violence, that is murder, to cause death, in violation of 18 U.S.C. §§ 924(c), (j) (Count 2); obstruction of justice, in violation of 18 U.S.C. § 1519 (Count 3); and use of fire to commit interstate domestic violence, in violation of 18 U.S.C. § 844(h) (Count 4). ECF No. 31. On October 12, 2023, the Defendant moved to dismiss Count 4 for failure to state an offense. ECF No. 91. On October 17, 2023, the Defendant pleaded guilty to the indictment. Under the terms of the plea agreement executed in this case, the Defendant reserves his right to appeal any adverse decision of this court on his pending motion to dismiss Count 4. ECF No. 93, ¶ 11. The Defendant is awaiting sentencing.

**Argument**

I.   **Count 4 of the indictment is sufficient on its face, thus, there is no basis for dismissal.**

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The purpose of an indictment is not to convince a defendant of his guilt but to put the defendant on notice of the charges against him, so that he may prepare a defense, and protect himself against a second prosecution for the same offense.  The Fourth Circuit has instructed that the indictment is sufficient "(1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011).

In relevant part, § 844(h) provides that "[w]hoever — (1) *uses fire* or an explosive *to commit any felony* which may be prosecuted in a court of the United States ... shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years." 18 U.S.C. § 844(h)(1) (emphasis added).  To state an offense under § 844(h)(1), the indictment must adequately allege: (1) that the defendant committed a felony for which he may be prosecuted in a court of the United States; and (2) that the defendant used fire or an explosive to commit that felony.  *See United States v. Martin*, 523 F.3d 281, 288 (4th Cir. 2008).  In Count 4, the indictment charges:

> That on or about June 11, 2020, the Defendant did knowingly use fire in the commission of a felony, namely, interstate domestic violence resulting in death, as charged in Count 1, in violation of 18 U.S.C. § 2261(a)(2), a felony prosecutable in a court of the United States, in violation of 18 U.S.C. § 844(h).

ECF No. 31.

By closely tracking § 844(h)'s language, Count 4 provides the Defendant with sufficient notice of the charge against him. *See United States v. Brandon,* 298 F.3d 307, 310 (4th Cir. 2002) (quoting *United States v. Wicks,* 187 F.3d 426, 427 (4th Cir. 1999)) ("Generally, an indictment is sufficient if it alleges an offense in the words of the statute ...."). Count 4's factual allegations also enable the Defendant "to plead an acquittal or conviction to bar a future prosecution for the same offense." *Rendelman*, 641 F.3d at 44. Count 4 identifies the date the alleged offense occurred, June 11, 2020, and how the offense was committed, namely by "fire." The allegations adequately identify the facts and circumstances of the violation of § 844(h)(1), including the felony offense on which Count 4 is based, thereby enabling the Defendant to plead double jeopardy in a subsequent prosecution for the same offense.

Federal Rule of Criminal Procedure 12(b) allows a defendant to move to dismiss an indictment for defects in the indictment, including failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B). The Defendant contends that as a matter of law, Count 4 fails to state an offense based on the interpretation of the term "use" in § 924(c), which requires "active employment" of a weapon during a crime of violence or drug trafficking crime. *Bailey v. United States*, 516 U.S. 137 (1995). Essentially, he argues that although he used fire, his conduct did not constitute a violation of § 844(h)(1) because fire was not "used to commit" the murder alleged in Count 1. *See Motion* at 1-3. The Defendant has made a factual argument that he did not "use fire to commit a felony" within the meaning of § 844(h)(1), rather than a legal argument that the indictment did not plead sufficient facts.

Under Rule 12(b)(3)(B), "the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." The Defendant has not established a deficiency

3

in the indictment. Because a challenge to the sufficiency of an indictment is limited to the allegations as set forth in the indictment, to warrant dismissal of an indictment, a defendant must demonstrate that the allegations contained in the indictment, assumed to be true, fail to state an offense. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). Accordingly, the Defendant's motion to dismiss should be denied.

**II.     The uncontested evidence shows the Defendant used fire in the commission of interstate domestic violence resulting in death.**

Although a motion to dismiss under Rule 12(b) generally tests the sufficiency of the charges without regard to facts not contained within the indictment, "a district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts. *United States v. Weaver*, 659 F.3d 353, 356 n.* (4th Cir. 2011) (collecting cases). The Tenth Circuit similarly has observed that courts should "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency," but that in "limited circumstances," "a district court may dismiss charges at the pretrial stage where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (cleaned up). Such a "[p]retrial dismissal based on undisputed facts is a determination that *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." *Id.* (quotation marks omitted, emphasis in original). It "is the rare exception, not the rule," and should not be "made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the [d]efendant could not have committed the offense for which he was indicted." *Id.* (quotation marks omitted). Under the particular circumstances of this case, the Government does not object to the Court's

4

consideration of the undisputed facts or to any determination regarding whether the Government is able to prove beyond a reasonable doubt that the Defendant used fire in the commission of interstate domestic violence resulting in death.  His motion to dismiss should be denied.

The statute primarily at issue is 18 U.S.C. § 844(h)(1), which provides for a consecutive 10-year sentence for whoever "uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States." In Count 4, the indictment charges that on or about June 11, 2020, the Defendant did knowingly use fire in the commission of a felony, namely, interstate domestic violence resulting in death under 18 U.S.C. § 2261(a)(2), as charged in Count 1, in violation of 18 U.S.C. § 844(h).[1] The elements of the offense are: (1) that the defendant committed a felony for which he may be prosecuted in a court of the United States; and (2) that the defendant used fire or an explosive to commit that felony. *See United States v. Martin*, 523 F.3d 281, 288 (4th Cir. 2008).

The Defendant argues "the fire was not used in the commission of the killing charged in Count One." ECF No. 91 at 2.  As an initial matter, the Defendant's motion rests on the mistaken assumption that the indictment alleges he used fire in furtherance of a murder. Instead, the indictment plainly alleges the Defendant used fire to further the commission of interstate domestic violence resulting in death. ECF No. 31 at 3.  The uncontested facts establish that he did.

The Defendant agreed at the Rule 11 hearing that he and the victim were last known to be together in Piedmont, South Carolina, from June 7, 2020, to on or about June 10, 2020.  On June

---

[1] Count 1 charges that between on or about June 9, 2020 and June 11, 2020, in the District of South Carolina and elsewhere, the Defendant did knowingly and unlawfully cause his spouse and intimate partner, N.Z.F., to travel in interstate commerce by force, coercion, duress and fraud, and in the course of and to facilitate such conduct and travel, did commit a crime of violence, namely murder, as defined in 18 U.S.C. § 1111, which resulted in the death of N.Z.F., in violation of 18 U.S.C. §§ 2261(a)(2) and 2261(b)(1).

5

13, 2020, a groundskeeper discovered what appeared to him to be a makeshift grave at Hill Cemetery in Fredonia, Kentucky. Fredonia, Kentucky, is at least a seven-hour drive from Piedmont, South Carolina. Officers with the Kentucky State Police (KSP) recovered a body from the grave and a small gas can from behind a tree near the gravesite, on which the victim and the Defendant's DNA was later found. Gasoline is commonly used as a fire accelerant. No purse, identification, or cell phone was recovered from the burial site. While an autopsy was being conducted, KSP agents set about identifying the body, conducting interviews, and recovering surveillance camera footage from nearby businesses. An autopsy later identified the partially charred body as that of the victim and determined the manner of death is homicide, and the cause of death was a .22 caliber bullet wound to the head.

In *United States v. Helem*, 186 F.3d 449 (4th Cir. 1999), the Fourth Circuit affirmed a conviction for interstate domestic violence where, like here, the defendant transported the victim across a state line to hide her condition and in an attempt to avoid law enforcement detection.[2] In March 1997, the defendant beat his wife in their apartment, and she began to pack up her belongings. *Id.* at 451. She walked to the door to leave, and the defendant grabbed her from behind in a choke hold, jerked her, pulled her into the bedroom, and continued choking her. *Id.* at 451-52. He flung her across the floor, causing carpet burns on her arms, then started choking her again and told her she was going to meet her sister and daughter, both of whom were deceased. *Id.* at 452. He began striking her in the face until she lost consciousness. *Id.* When she regained

---

[2] *Helem* analyzed an earlier version of § 2261(a)(2), which made it unlawful to cause a spouse or intimate partner to cross a state line "by force, coercion, duress, or fraud and, in the course or as a result of that conduct," intentionally committing a crime of violence and thereby causing bodily injury. 18 U.S.C. § 2261(a)(2) (1997). Today, § 2261(a)(2) makes it unlawful to cause a spouse, intimate partner, or dating partner to travel in interstate commerce "by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel," committing or attempting to commit a crime of violence against that person. 18 U.S.C. § 2261(a)(2) (2023).

6

consciousness, he resumed choking her. *Id.* Her face was covered in blood, and she was barely able to speak. *Id.*

The defendant told her "they had to leave because no one could see her in her current condition." *Id.* He put his wife in the car and began driving south into Virginian and then North Carolina. *Id.* His wife was weak, in pain, could barely see or speak, and was in and out of consciousness. *Id.* He eventually took her to the hospital, telling medical personnel she had been in a car accident. *Id.* He was ultimately arrested and charged with interstate domestic violence and kidnapping. *Id.* at 451. He was convicted of interstate domestic violence after a jury trial. *Id.*

On appeal, the defendant argued the offense of interstate domestic violence does not reach acts of violence that occur before the interstate travel begins. *Id.* at 454. The Fourth Circuit explained that the crime of violence that occurred inside the couple's apartment in Maryland enabled the defendant to force the victim across state lines. *Id.* at 455. "Consequently," the court concluded, "the beating that took place inside the apartment occurred 'in the course of' [the defendant] forcibly 'causing' [the victim] to 'cross a State line.'" *Id.* Additionally, the evidence showed the defendant moved the victim to another state "because he did not want anyone to see her in that condition, knowing the possible consequences for himself and knowing that interstate travel would make it more difficult for law enforcement to hold him liable for this crime." *Id.* And that "situation is precisely the type of situation that the Violence Against Women Act ("VAWA") was intended to cover."[3] *Id.*

---

[3] Gaps and inadequacies of state law enforcement were among the main reasons for which federal legislation dealing with domestic violence was thought to be necessary. *United States v. Page*, 167 F.3d 325, 328 (6th Cir. 1999) (*en banc*). The VAWA was intended to deal with the problem of batterers who make their crimes more difficult to discover and prosecute by carrying or forcing their intimate partners across state lines. *See* S.REP. NO. 103–138, at 43, 62. *see* Pub.L. No. 103–322, 108 Stat. 1796, 1902–55 (1994). Those who enacted the VAWA's interstate domestic violence provision recognized that batterers were using interstate travel as a loophole in the system of state law enforcement and that such crimes, "because of their interstate nature, transcend the

In short, *Helem* makes clear that interstate domestic violence is a continuing offense spanning space and time. *See* 18 U.S.C. § 3237(a) ("Any offense involving the use of the mails, transportation in interstate or foreign commerce, … is a continuing offense and [for venue purposes] may be prosecuted "in any district from, through, or into which such commerce ... moves.". . ."). The conduct in committing interstate domestic violence resulting in death cannot be segmented as the Defendant seeks to do because the offense continues so long as the offender acts—and travels—to complete the offense. *See, e.g., United States v. Rodriguez–Moreno,* 119 S.Ct. 1239, 1244 (1999) (a continuing offense, like kidnapping, is not complete until the victim is free); *United States v. Crossley,* 224 F.3d 847, 859 (6th Cir. 2000), *superseded by statute as stated in United States v. Martinez*, 795 F. App'x 367 (6th Cir. 2019) (holding statute of limitations begins to run only when all elements of crime have occurred); *United States v. Engle*, 676 F.3d 405 (4th Cir. 2012) (holding § 2251(a) charge predicated upon transportation of contraband in interstate or foreign commerce is not complete until that transportation occurs); *United States v. Schaffner,* 258 F.3d 675, 683 (7th Cir. 2001) ("The criminal activity is inducing a minor to participate in the taking of a photograph *and* the photograph's movement in interstate commerce.").

In this case, just as in *Helem*, the uncontroverted evidence supports the conclusion that the Defendant transported the victim from South Carolina to Kentucky, burned her, and buried her body in a makeshift grave to hide her condition and to "make it more difficult for law enforcement to hold him liable for this crime." 186 F.3d at 455. The Defendant clearly saw fire as integral to his ability to complete (not just conceal) the offense. The undisputed evidence, including his own

---

abilities of State law enforcement agencies." S.REP. NO. 103–138, at 62. Among numerous other provisions, the Act criminalized interstate domestic violence and interstate violation of protection orders. *See* VAWA § 40221(a), 108 Stat. at 1926–31, 18 U.S.C. §§ 2261, 2262.

words, show the use of fire was an integral part of his plan to "kill, burn and bury [the victim]." Upon his arrival in Kentucky, the Defendant purchased a gas can and gasoline to make a potent fire and located a cemetery to carry out his plan. The fire was not used only to conceal the fact of the homicide and aid his ability to evade detection; it was an act committed to further abuse and degrade the victim. Under the plain meaning of the term, the Defendant "used" fire to commit interstate domestic violence resulting in death. And as *Helem* explained, this situation is exactly the type of offense Congress was targeting when it passed § 2261. The fire was clearly used in the commission of the interstate domestic violence offense—a felony which may be prosecuted in a court of the United States—as required by § 844(h)(1). *See* 18 U.S.C. § 844(h)(1).

The Defendant's arguments to the contrary are unavailing. First, the Defendant argues concealment of the predicate crime is not part of the crime itself. ECF No. 91 at 3. He relies for that proposition on *Grunewald v. United States*, 353 U.S. 391 (1957), in which the Supreme Court analyzed whether a tax fraud conspiracy charge was barred by the statute of limitations. The Government argued that, even if the main object of the conspiracy was to obtain government decisions not to institute criminal tax prosecutions, the evidence showed the conspiracy also included a subsidiary agreement to conceal the conspiracy so the conspirators would escape detention. *Id.* at 398. The Court held that on the facts before it, an agreement to conceal a conspiracy could not be deemed part of the conspiracy such that it would extend the conspiracy's duration. *Id.* at 399. It explained that "after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." *Id.* at 401-02. And it concluded that acts of concealment, "even though done in the context of a mutually understood need for secrecy,

9

cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators." *Id.* at 402. *Grunewald* dealt with efforts to conceal conspiracies; it did not, as the Defendant suggests, hold that concealment is never "part of the main criminal objective." *See* ECF No. 91 at 4. As discussed above, addressing the exact statute currently before this Court, *Helem* established that forcing a spouse to travel across state lines to conceal a crime of violence is part of the offense of interstate domestic violence under § 2261(a)(2).

Second, the Defendant argues "the use of fire must have been actively employed to commit the killing," but the murder was complete before the use of any fire, which he claims this is fatal to the indictment. ECF No. 91 at 3. He contends that the Supreme Court's interpretation of the term "use" from 18 U.S.C. § 924(c) in *Bailey v. United States*, 516 U.S. 137 – requiring "active employment" of a weapon during a crime of violence or drug trafficking crime – should apply to the term in § 844(h).

Nonetheless, even if the Court adopts *Bailey*'s "actively employed" formulation in construing § 844(h)(1), that standard is satisfied here because the Defendant concedes that he burned Nicole's body with fire. It is clear that his "use" of fire falls within the conduct prohibited under § 844(h)(1). His claim that the fire was not used until the underlying predicate offense was completed is unavailing.

As explained above, the interstate domestic violence offense was ongoing when fire was used. Additionally, with respect to § 844(h)(1), courts have broadly found that fire need not be a "necessary predicate" for the commission of the felony offense; rather, all that is required is that fire was employed as a part of the commission of the crime, including the use of fire as a diversionary tactic before the felony offense is completed. For example, in *United States v.*

*Desposito*, 704 F.3d 221, 227-29 (2d Cir. 2013), the Second Circuit held that the use of fire was "integral" to a bank robbery where the defendant lit a car on fire so he could rob the bank while authorities were preoccupied by the fire. In *United States v. Challoner*, 65 F. App'x 222, 226 (10th Cir. 2003) (unpublished), the Tenth Circuit affirmed the defendant's § 844(h) conviction where the defendant used Molotov cocktails to set fire to an elementary school to distract law enforcement in an attempt to enable the defendant and his coconspirators to commit a bank robbery. The Court found that setting the school fire occurred as part of the defendant's "pre-planned attempt to commit an armed bank robbery." *Id.*

The "use" of fire to conceal the true nature of an offense, even if not required to commit the offense, has also been found to be within the reach of § 844(h)(1). *See United States v. McAuliffe*, 490 F.3d 526, 535 (6th Cir. 2007) (holding defendant used fire to commit mail fraud where he burned his home down to collect insurance proceeds, and "§ 844(h)(1) creates a federal offense . . . for persons who commit crimes 'that do not require but may involve the use of fire'") (quoting *United States v. Patel*, 370 F.3d 108, 117 (1st Cir. 2004)). For example, in *United States v. Ruiz*, 105 F.3d 1492, 1503-05 (1st Cir. 1997), the First Circuit found that fire constituted "the means" by which the defendants attempted to create the appearance of a legitimate loss of insured items after setting fire to a business to carry out their scheme to deceive the insurance company. The court specifically found that although the defendants also "used" the mails in furtherance of the scheme to defraud, that does not diminish the fact that they also "employed" or "availed themselves of" fire to effect their scheme. *Id.* at 1504; *cf. Smith v. United States,* 113 S.Ct. 2050, 2054-55 (1993) (explaining that including one method of "us[ing] a firearm" does not result in excluding others).

The uncontested evidence establishes that the Defendant used fire in the commission of

11

interstate domestic violence resulting in death. The Fourth Circuit has recognized that interstate travel undertaken to conceal harm to a victim or to evade law enforcement is part of the interstate domestic violence crime. The Defendant's use of fire in Kentucky is unquestionably part of that crime. The Defendant cannot show that, as a matter of law, the Government is incapable of proving its case beyond a reasonable doubt. *See Todd*, 446 F.3d at 1068.

## Conclusion

For the foregoing reasons, the Defendant's motion to dismiss should be denied.

        Respectfully submitted,

        ADAIR F. BOROUGHS
        UNITED STATES ATTORNEY

BY:    *s/Leesa Washington*
        Leesa Washington (Fed ID 06973)
        Benjamin N. Garner (Fed ID 11477)
        Assistant United States Attorneys
        55 Beattie Place, Suite 700
        Greenville, SC 29601
        Telephone: (864) 282-2100
        Email: Leesa.Washington@usdoj.gov

November 3, 2023