IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

UNITED STATES OF AMERICA

v.

LAWRENCE JOSEPH FLORENTINE

CRIMINAL NO: 6:22-cr-1012-DCC

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum to notify the Court of its position regarding the remaining objections to the revised presentence report (PSR) filed in this case.

### Objections to Presentence Report's Factual Findings

Florentine's general denials of the PSR's findings are insufficient. *See e.g.*, *United States v. Brame*, 448 F. App'x 364, 366-67 (4th Cir. 2011) (per curiam); *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). "The defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable and articulate the reasons why the facts contained therein are untrue or inaccurate." *Terry*, 916 F.2d at 162. "Without an affirmative showing [that] the information is inaccurate, the court is free to adopt the findings of the presentence report without more specific inquiry or explanation." *Id*. (cleaned up). Where, as in this case, a defendant offers no evidence to support his objections, a district adoption of the presentence report has been affirmed. *See, e.g.*, *United States v. Hedspeth*, 760 F. App'x 236, 240 (4th Cir. 2019) (per curiam) (citing, *United States v. Mondragon*, 860 F.3d 227, 233 (4th Cir. 2017) ("[T]he defendant bears an affirmative duty to show that the information in the presentence report is unreliable and articulate the reasons why the facts contained therein are untrue or

inaccurate." (internal quotation marks omitted)); *United States v. Yeigh*, 725 F. App'x 207, 209 (4th Cir. 2018) (per curiam); *United States v. Dieguez*, 633 F. App'x 106, 111 (4th Cir. 2015) (per curiam).

Federal Rule of Criminal Procedure 32(i)(3)(A) permits the Court to "accept any undisputed portion of the presentence report as a finding of fact." However, for any disputed portion of the PSR, the court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Rule 32(i)(3)(B). The rule's purpose is "to ensure that a record is made as to how the district court ruled on any alleged inaccuracy in the PSR." *United States v. Walker*, 29 F.3d 908, 911 (4th Cir. 1994). But fulfilling that purpose does not require the district court to "articulate a finding as to disputed factual allegations with minute specificity" or to rule on each disputed matter separately. *Id.* (citations omitted). Rather, often the court may make the required finding simply by expressly adopting the PSR's findings of fact. *See, e.g.*, *United States v. Perez-Roblero*, 663 F. App'x 283, 285 (4th Cir. 2016) (per curiam) (citing *United States v. Morgan*, 942 F.2d 243, 245 (4th Cir. 1991)); *United States v. Bolden*, 325 F.3d 471, 497 (4th Cir. 2003); *United States v. Walker*, 29 F.3d 908, 912 (4th Cir. 1994).

**<u>Objections 1, 2, 3:</u>**

**The defendant denies the conduct described in PSR, ¶¶ 10, 12, 14, however, he does not deny that the victim reported the conduct to police.**

If necessary, the Government intends to offer testimony of a case agent regarding reports of prior domestic violence incidents, including video evidence of the victim's statements to police as described in PSR, ¶¶ 10, 12, 14.[1] *United States v. Umana*, 750 F.3d 320, 345-49 (4th Cir. 2014)

---

[1] On December 2, 2019, as captured on police body worn camera (Exhibit 1) the victim reported to the 911 operator, in part:

I need you to send an officer out to [the Glasscock residence] . . . My husband has stolen my dogs, and he has threatened to kill me and them, and I need somebody to go check on my dogs, please . . . He has threatened to kill them . . .   I just left a few days ago. He has assaulted me . . .   He stole the dogs from Rock Hill City . . . No, I went out to meet him, to talk to him. He said he was sorry, he came up here the other night in the city, and he assaulted me. And he said he was just out of his mind, you know, would I please forgive him and come talk to him. So, I went to go talk to him… and he pushed me down, threw scissors at me and stuff, and then he beat me back to my grandma's house where I was staying, and he broke into the house here and he took the dogs. And I had to stop somebody to call the police department because he stole my phones as well, and when I was on the phone with them, he whipped around me and then he was leaving with the dogs. I didn't know they were in the car until I got home, I opened my grandma's house. The crate was empty . . . . He has a F-250, a white F-250 its jacked up real tall . . . Exhibit 1, Video Counter: 15:00-18:35.

On December 10, 2019, Nicole called 9-1-1 and reported that Florentine was present at the residence and was "burning items in the front yard and threatening to kill her." Exhibit 2_ York County 911 Command Log (attached).

On December 11, 2019, as captured on police body worn camera (Exhibit 3), the victim reported to police in part:

… And then he's like 'get rid of the dog.' I said, 'I'm not getting rid of the dog, just let me pack some stuff, and I'll leave.' So, he throws me on the couch, chokes me out, he punches me in the head like three times . . . I went outside, and I said, 'Larry, you're not going to keep hitting me like this. I cannot take it anymore." [Florentine told her,] 'I'll get the gun and kill you and this goddamn dog.'.' . . .   He keeps freaking hitting me, and he's on meth. He's a monster. I mean, period. That's it, that's the reason right there. . . Exhibit 3, Video Counter: 0:00-2:10.

He gets up this morning and he's pissed off about the dog, tells me to get rid of the dog, throws me down on the couch, chokes me out, and whales me in the head like three times. He's screaming in my ear, like pulling my hair, 'Bitch, I hate you. Ima fucking kill you.' Like, 'Go ahead and get your phone, call the law.' And I'm like, 'Larry, calm down,' just trying to calm him down, you know? I did a 9-1-1 emergency hang up to Rock Hill… nobody came. He goes and lays back down. I let the dogs out. He gets up, and he starts again. He's standing beside my [car] fixing to bust my window out when I called the lady trying to get the dog out to kill the dog with a brick… It's freaking scary you know. . . [hit me with] his hand, no like bam . . . bam, oh it wasn't a smack . . . and then like then pulled my hair back and put his hands around my throat and was like screaming. . . [Florentine] is the type of person who… he goes from whaling me in my head and calling me a cunt and a bitch, and then you guys walk up and he's like, 'Hi, I'm Mr. Florentine. She's

3

(holding district court appropriately permitted detectives to testify at sentencing phase of capital trial about interviews with three MS-13 members, and properly admitted transcripts of several of those interviews). At sentencing the Court may, consider "any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010); *see also United States v. Youngblood*, 719 F. App'x 195, 196-97 (4th Cir. 2018) (holding victim's videotaped interview was sufficiently reliable for consideration at sentencing) ("Although we have made it clear that due process requires that sentencing courts rely only on evidence with some minimal level of reliability, we have rejected the argument that without cross-examination evidence can never be reliable enough to use at sentencing.") (internal quotation marks and alterations omitted).

**Objection 4:**

**The defendant denies that he sent the text messages to the victim as indicated in PSR, ¶ 19.**

The Government intends to rely on testimony of a case agent and previous statements made by the victim's grandmother, Beverly Flavell, to law enforcement.

**Objection 5:**

**The defendant denies conduct attributed to him in Beverly Flavell's statements to law enforcement as indicated in PSR, ¶ 34.**

---

on federal probation. Are y'all doing okay today' . . . all in one sentence. And I'm looking fucking crazy; of course, he's smart enough to not put any marks on my head; he's smart enough to do all this other shit . . . Exhibit 3, Video Counter: 11:43-14:33.

The defendant was arrested on two counts of second-degree domestic violence.

If necessary, the Government intends to rely on statements made by Beverly Flavell to law enforcement and video evidence of the victim's statements to police. For example, on June 19, 2020, a SLED agent notified Flavell that the victim had been found dead. The agent did not provide any details concerning the cause or manner of death or the circumstances under which the victim's body was found. Without any of this information, Flavell told the agent that the victim reported to her multiple times that Florentine threatened to "kill, burn and bury her body so that nobody would be able to find her." SLED Death Notification Video_ June 19, 2020. The undisputed facts and circumstances of the offense of conviction corroborate his alleged threats.

**Objection 6:**

**The defendant denies that he sent the text messages indicated in PSR, ¶ 35 to the victim.**

The Government intends to rely on testimony of a case agent and previous statements made by Beverly Flavell to law enforcement.

**Objections 7, 8, 9:**

**The defendant denies the substance of the statements in PSR, ¶¶ 55, 56, 57.**

A ruling from the Court is unnecessary either because the matters will not affect sentencing, or because the court declines to consider the matter in sentencing.

**Objection 10:**

**The defendant claims the statements in PSR, ¶ 58 are inaccurate as to the alleged fraud amount.**

The Government concedes the amount of the alleged fraud was not $50,000. On February 5, 2020, the defendant, who was living with his sister in Connecticut as a condition of his bond on the domestic violence charges, reported to the Rock Hill Police Department that the victim used a debit card for a joint bank account in the names of the defendant and his sister to withdraw approximately $400 without his permission. On April 1, 2020, the victim was arrested and charged

with transaction card fraud less than $500. According to police reports, the same day, the defendant contacted police multiple times to explain that because he was an authorized user, the victim lawfully accessed the bank account, and the warrant should be rescinded. Upon her release, on April 6, 2020, the victim asked prosecutors in York County to dismiss the December 2019 domestic violence charges against the defendant. According to Beverly Flavell, the victim's request to dismiss the charges was made, at least in part, in exchange for the defendant's agreement to dismiss the financial transaction card fraud charge then pending against her. The fraud charges were not dismissed because the defendant's sister refused to join in his request to dismiss.

### Objection 11:

**The defendant denies the substance of the statements in PSR, ¶ 59.**

A ruling from the Court is unnecessary either because the matter will not affect sentencing, or because the court declines to consider the matter in sentencing.

### Objections 12, 13, 14, 15, 16:

**The defendant denies the substance of the statements in PSR, ¶¶ 61, 67, 72, 74, 75.**

A ruling from the Court is unnecessary either because the matters will not affect sentencing, or because the court declines to consider the matter in sentencing.

### Objection 17:

**To the extent it is inconsistent with his motion to dismiss Count 4, the defendant objects to the language in PSR, ¶ 90.**

A ruling from the Court is unnecessary either because the matter will not affect sentencing, or because the court declines to consider the matter in sentencing.

### Objection 18:

**The defendant objects to application of § 3C1.1 for obstruction of justice as impermissible double counting because it is based on same conduct as underlying conviction.**

The Government agrees with the probation officer's response.

Exhibits 1-3 have been provided in discovery and will be forwarded to the Court.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

BY:    */s/ Leesa Washington*
Leesa Washington (Fed ID #06973)
Benjamin N. Garner (Fed ID #11477)
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, South Carolina 29601
Telephone: (864) 282-2100
Email: Leesa.Washington@usdoj.gov

April 1, 2024